All right, counsel, you may proceed. Good morning, Your Honors. May it please the Court. I am Kevin Bay. I represent Robert Steinberg. He's the trustee for the bankruptcy estate of Beulah Snow. I will use seven minutes of my time now and save three for rebuttal, if that's all right. Thank you. My comments are going to focus on what we see as the primary issue, and that is the treatment of the deed in transfer number six and the enforceability of what we call the successive redundant deed. The Court has done the rather tedious job of tracing title through all these transfers, and I don't think there's any dispute as to the tracing but for transfer number six. And the controlling issue boils down to this. Was the quick claim deed that was executed by the Snow Family Trust on January 7, 1999, was it effective or ineffective given the fact that two days prior, the trust had executed another quick claim deed conveying its interest in the property? Now, the trustee submits that the deed was ineffective for the simple reason that when the trust signed or executed the deed on January 7, it had no interest to convey. Now, can we just stop there? When on transfer number two, Chris granted, this is back in 1995. When Chris granted to Beulah, he didn't have any interest. What interest did he have at that time? He had a potential after acquired title interest. So he had a potential after acquired title, and he hadn't previously conveyed his potential after acquired title. Is that correct? Correct. Okay. So now we go down to transfer number five, and the trust conveys to Chris, and what is it conveying at that point? It, again, does not hold current title at that time, so it's conveying an after acquired title interest. Okay. So then it conveys on transfer number six a second deed. Why couldn't it be conveying by that deed any after acquired title it might acquire? Because in transfer number five, let me back up a little bit. Each one of these deeds transfers what I call two interests, the current title interest if they happen to hold title. None of them do. Present and future interest. Yeah, present and future interest. If they don't hold title, they are saying, I'm transferring any after acquired title I obtain. So once one of these folks signs a deed transferring both those interests, that then exhausts their interest in the property. Because they are transferring, for example, in five, the Snow Family Trust is transferring to Chris Snow my current title, and if I don't have current title, I'm transferring you any after acquired title. For number six. So that's all the ownership interest it could have. A hundred percent. A hundred percent. A hundred percent. There's no, and if I get it again, like the third acquired. That's exactly what I was going to say. For six to be effective, the language of the deed would have to say something along the lines, I don't have title now. If I acquire it in the future, give it away, and then get it back a second time, then I give that to you. That's what that number six deed would have to say. Query whether that would be enforceable under the Washington statute allowing for after acquired title, but we don't need to get to that. Now, the district court had difficulty with this analysis. And it compared or analogized the transfers in five and six with others such as four and seven. And it said, well, a six is void because it's duplicative of five. Seven must be void because it's duplicative of four, and we know we can't have that, so it didn't buy the trustee's analysis. And in doing that, I think the district court just simply overlooked the importance of intervening deed, which gives title back to a grantor after the first transfer and before the second one. So let me take transfers four and seven, for example, and use that as an example to explain it. The reason transfers four and seven are different than transfers five and six are is because of the intervening deed. In transfer four, Chris Snow conveyed to the family trust both his present and future interest, so he can't convey that interest again. It's gone. So if he had signed another deed the next day, it would have been ineffective. But here's the distinguishing fact. After Chris Snow conveyed the interest that is transfer number four, he got the property back. So he conveyed it away. He got it back. He now has a new interest, and he got it back through transfer number five. Yeah. He didn't get it back. He got an interest. He got the after-acquired interest back. Yeah. Correct. So now when it comes time for transfer number seven, he has a new interest to convey. Again, it's still a future interest. Still a future interest, but it's a new future interest because he gave one away in transfer four, got it back, and he's given away another one in transfer seven. In contrast, the transfers, the deeds in transfers five and six had no intervening deed. It is the exact same interest that the trust is giving in six as it gave in five. May I ask a couple questions? Just down. Are there any of these deeds that do not contain the after-acquired clause? They all contain the after-acquired title clause. And what is the policy or purpose behind having an after-acquired clause? In Washington, the statute provides that you can, when you convey title but don't own it when you sign the deed, it conveys any after-acquired title. So with a statutory warranty deed, you do not have to even have it in the language of the deed. In a quick claim deed, less of a deed than a warranty deed, you have to have it in, you have to have language in the quick claim deed that conveys your after-acquired title. And the purpose of it is the same as the statute. It says if, you know, I can transfer to you a future interest in this property if I so choose. What the value of it is, I'm not sure. But that's why it's there. And why would, like, three parties like this, what would be a legitimate motivation for three parties like this to engage in these transfers around, back and forth to each other? To confuse us? With regard to these three parties, the answer is I don't know. All right. And we didn't, we did these cross motions for summary judgment early in the case. We didn't do discovery. We have some suspicions that aren't in the record and had to do with getting elderly tax credits by who owned the property and things like this. And clearly Chris Snow was in there trying to get loans against the property and prove that he had some kind of interest. But the fact is there's nothing in the record that shows what these people were doing, if they knew what they were doing, and I certainly don't know what they were doing. It would be easier to sort through this if we knew what was going on overall. But we don't know. We just have to go through these deeds. We just, yeah, our. The judge did and the district court. Right. Is that there are no ambiguities in the deeds themselves. They say where the property goes. And so the extrinsic evidence, at least in our view, is irrelevant. Your Honor, with your questions, you've hit all the points I wanted to hit, so I will, like I said, save a few minutes for rebuttal if I need to. Thank you. Thank you very much. Good morning. I'm Scott Smith of Riddell Williams. I'm pleased to represent Fairbanks Capital in what is probably one of the most unusual cases because what we have in front of me is a series of deeds, quick-lane deeds between a mother, her son, and a family trust. Frankly, make no sense. And I think your question, Your Honor, what were the parties thinking and doing is one of the important ways to look at this case and try to figure out what's going on. They were, we know what was going on. What they were trying to do was set up a hypothetical for the Washington State Bar Exam, a real property question. I don't think anybody in this room would want to take that particular, answer that question on the test. But, you know, in the absence of any case ever, neither of us found one in which this fact pattern arose, we looked to and found two rules of law which I think help guide this. The first is a very simple rule that all deeds shall be given effect. It's a very simple proposition. It's one that the bankruptcy trustee does not address and completely ignores in all of his briefing. And the other is the paramount rule of contract interpretation that the goal of looking at a contract is to try to ascertain what the intent of the parties is. And when you can't tell in looking at the documents in and of themselves as a whole, you look to extrinsic evidence. And this is a case in which I think that would be quite appropriate. When you do either of those, the result is the same. And the fact that they dovetailed in their result gives and should give this Court and gave the district court some confidence that the result was correct, that Chris Snow was, in fact, entitled when he took out the loan starting back in 2000. He previously received a series of other loans on the property, and then in January 2000 he applied for what was by that point the largest loan of all, $450,000. He's got a loan application in which he states under penalty of perjury that this is his home. He's lived there for 12 years, and he is the current owner. The loan occurred when? The loan was in the first loan in a series was January 2000. There was a second loan. It was January 2001. That was the loan to my client. He refinanced a second or fourth or fifth time. That's the one you're concerned with. That's the one I'm concerned with. But I also think it's important to look at the context of these two last quit claim deeds. Why were they signed at that point in time? It's because Chris Snow was refinancing his existing loans on his home. And because the last deed in the chain of title was the one that said the grantee is the Snow Family Trust, the lender understandably said, I don't know that this makes sense, so let's straighten this out. Let's make sure that the borrower really is in title. So a little belt and suspenders move. We'll get two more quit claim deeds executed right now before we issue the new loan, the Chris, the homeowner, and the borrower. That's what happened in January 2000. That doesn't explain, at least to me anyway, why you have back-to-back quit claims, why that reinforces it. In other words, when you do a deed or a transfer of an interest in real property, there are real property laws that govern. Property one from law school tells you that. So one may be for the convenience of the parties that they have some interest in doing all this, but when someone grants his interest in a piece of property, the words have legal effect. They do. Okay, so to say, well, because they decided to do identical deeds two days apart, and the legal operative effect is of the first in that sequence, two-step sequence, the first one divests the grantor of both present and future interest, then what is it that, as a matter of real estate law, he has to convey on the second one? He's already conveyed present and future interest. First point, Your Honor, is there is no case law that talks about a term that the bankruptcy trustee is injecting in this case, and that's the notion of successive or redundant deeds. There's no case law to support the notion of successive. Well, let's say that's a descriptor. I didn't ask that. It's a nice label to apply. No, no. That doesn't answer my question. My question is, if the legal effect of a deed is to transfer the grantor's interest and the only two interests that he can have are current and future, and the deed purports to convey current and future, the lender, looking as that deed comes along and finds a second deed two days later that's identical, the lender seems to me, for securing to assure it has something to secure its loan, would want to know what is the grantor on that deed granting and what legal effect could it have. And now you're suggesting, well, then it sort of depends on what, you know, outside the chain of title what the grantor and grantee had in mind. You have to look to extrinsic evidence. There are two ways to look at the case. One is to look at extrinsic evidence to which the clear uncontested evidence, as Chris Snow was entitled. The other is to do what the district court did, and that's to look without any consideration of the context in which this transaction took place and look at the deeds. The trustees suggest, well, we've got a second deed that's the same as an earlier deed, so therefore you ignore the second deed. You're just dodging my question. What is there left for the grantor to grant once he has granted his present and future interest? What has he got left to grant? If he has nothing left to grant, I don't know the answer to that, Your Honor, because there's no case law along those lines. Well, the bankruptcy court concluded that there was nothing left. It's a nullity. But if that is true, and if that is the rule of law that governs this case, the number 7 is identical to number 4. No, it isn't. No, it isn't, because between number 4 and number 7, Chris got another interest, a future interest, through a subsequent deed between. But that suggests some rationality. From number 5. He got conveyed. Didn't number 5 convey to him? Number 5 conveyed to Chris. That transfer conveyed from the trust to Chris. He acquired a future interest. Now he has something to transfer again. Okay, and if that's the case, then the question is were the parties intending with these documents to allow what I'll call a second bounce back? In other words, if I come into title a second time, I want to make sure that I don't hold on to it. I'm going to give it away a second time. So while he doesn't ---- That's a future future, and that's not in the statute. That's a future future. That would be conveying a present future and then another future, and that's not in the statute. No. But, again, the statute doesn't address this bizarre set of circumstances. It just doesn't. Well, the problem I have with it is, and I'm not ---- I understand your position, but trying to step back at the chain of title, is Washington a community property state? Yes. Okay, so California. Yeah. I'm not an expert in California law either. Having been inculcated in the notion in real property that you look to the transfers of title and it arises out of English common law and it's all very, you know, very ---- It should be. Yeah. Very high bandwidth tradition. So I don't know whether there are nuances in Washington law, but if somebody looking at this chain of title is trying to figure out what interest a grantor has and lenders do this all the time. Absolutely. Obviously. That's why they get title insurance, because they're afraid that if somehow something's out there, a deed they aren't aware of comes in. You're absolutely correct. So here you have a transaction in the chain of title, and you're saying, well, we're supposed to look to extrinsic evidence to sort out what these people meant. We have to look beyond the plain words and the legal concept of what there is to convey and somehow put the people who are looking at the chain of title on some kind of inquiry notice, I gather, to say, whoa, we can't figure out what this would mean in the normal course. But given that any document's goal, especially in the world of real estate, is supposed to serve the function of imparting notice to people as to what's going on, who owns the property. Right. We've got a situation that everybody in this courtroom would be confused in terms of looking at. The lender at that point in time did exactly what you said. They looked at the chain of title. They said, this doesn't make sense, but let's clarify this. And so they talked to the two parties, mother and son. They both agreed that the son is supposed to be entitled. He will be entitled. And they both executed deeds and excise tax affidavits to make clear that it's their intent, despite any confusion in the documents previously executed, that Chris, in fact, would be the owner of the property. Now, if you don't consider that evidence at all, then I think the trial court judge was correct in saying you can't have it both ways. If there is such a notion that there are redundant successive deeds that are to be ignored, that rule should be applied consistently. And if you do that, then what we've got here is between after deed number three, in which everybody agrees Beulah Snow was entitled, and then deed number or transfer number eight, in which she then next transferred title, the intervening deeds, there are four of them, two from Chris to the trust and two from the trust to Chris. Either all four are given effect, which is the paramount rule that all deeds shall be given effect, or the redundant or successive redundant deeds would then drop out. And where's the other redundant deed? Number seven being redundant of number four. They're both from Chris to the trust. But there was the intervening. He got, in the interval, he got a... Your Honor, I cannot believe that that's what the parties intended when they signed those deeds. It really defies logic. Now you're going outside. Yes. Yes, Your Honor. All right. I think my time is up, so unless the panel has further questions, I'll... Thank you. Thank you very much. Very interesting case. Your Honors, I have no further comments unless you have questions for me. I'm happy to answer them. I have a question. As I understand it, the parties are in agreement that Beulah had the property as of April 97. And as I looked down these deeds, the next time that she conveys is deed eight, where she conveys to Chris Snow. Yes. Was that a valid transfer at that time? Well, it was a valid transfer of her... Are you talking about number three or number eight? Well, what I'm... As I understand it, the parties agree that she had title in April of 97. From that point on, she makes no effort to transfer her right until deed number eight. And so what I'm asking is, didn't she have the title at that time in January of 2000 to transfer to Chris Snow? She did have title in January of 2000 to transfer to Chris Snow. So as of that deed, Chris Snow has the title? No. He had earlier conveyed away his after-acquired or future interest. So it immediately went... When it went from Beulah to Chris, Chris had already given away title way back several years prior. So then it starts the tracing back on transfer number four. Well, if someone of reasonable intelligence looked at this and saw there's conveyance prior to the loan to Chris Snow, unless they went through this very strange after-acquired title, which I hope is limited to this date, they would think that Chris Snow had title at that point. Well, I don't know what they would think, but they would have to go through and do that tracing and get the headache like we all did. But, yes, they would have to go through that tracing analysis. That's okay. I understand. And actually look at the deeds, which most lenders would do, right? Before they would secure a loan by property, they would do a title search. I would expect, yes. All right. Thank you very much, counsel. Your grades will come in the mail. Yes. Snow v. Fairbanks is submitted.
judges: Wallace, Wardlaw, Fisher